IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALEXIS TYSON,[1] | § | No. 400, 2022 |
| | § | |
| Respondent Below, | § | Court Below—Family Court |
| Appellant, | § | of the State of Delaware |
| | § | |
| v. | § | File No. 22-05-11TN |
| | § | |
| DEPARTMENT OF SERVICES | § | Petition No. 22-10461 |
| FOR CHILDREN, YOUTH, AND | § | |
| THEIR FAMILIES/DIVISION OF | § | |
| FAMILY SERVICES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted:  March 17, 2023
Decided:  May 18, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

After consideration of the appellant's brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the responses, and the Family Court record, it appears to the Court that:

(1)  This is an appeal from the Family Court's order dated October 18, 2022, and amended October 20, 2022, that terminated the appellant's ("Mother") parental rights as to her twin children ("Children") born in 2021.  The Family Court's order

---

[1] The Court previously assigned pseudonyms to the appellant pursuant to Supreme Court Rule 7(d).

also terminated the parental rights of the Children's father, with his consent. We focus on the facts in the record as they relate to Mother's appeal.

(2) Mother's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26.1(c). Mother's counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Mother of the provisions of Rule 26.1(c) and provided her with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Mother of her right to supplement counsel's presentation. Mother did not respond with any points that she wanted to present for the Court's consideration. The Department of Services for Children, Youth and Their Families, Division of Family Services ("DSCYF") as appellee and the Children's attorney from the Office of the Child Advocate have responded to the Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) The Children were born in June 2021. Mother's three older children had been in the custody of Pennsylvania's child welfare agency for approximately three years. When Mother was pregnant with the Children, DSCYF had received information relating to Mother's health or mental health concerns. Notably, Mother claimed that she was in treatment for depression, anxiety, bipolar disorder, and attention deficit disorder. Her therapist disagreed that Mother was diagnosed with bipolar disorder but opined that Mother struggled with post-traumatic stress

2

disorder, mood disorder, depressive disorder, as well as severe postpartum depression following the birth of her older children. DSCYF referred the family to Children and Families First for the Family Assessment and Intervention Program, which assists parents with support for their children, and established a safety agreement under which the parents would reside with the Children at the home of the Children's paternal aunt ("Paternal Aunt").

(4) In July 2021, when the Children were approximately one month old, DSCYF received a hotline report that Mother and Father were shoving one another while one of them was holding one of the Children. Then, in August 2021, Father took the children to the hospital, expressing concerns that the Children were having breathing issues. On or around the same day, Paternal Aunt informed DSCYF that Mother, Father, and the Children were no longer welcome to stay in her home. DSCYF filed a petition for custody of the Children, alleging that there were concerns about unstable housing, medical neglect, Mother's mental health, and Father's physical health relating to seizures. The Family Court granted DSCYF's petition for custody, and the Children were placed in a foster home when they were less than three months old.

(5) The mandated hearings ensued.[2] Following the adjudicatory hearing in October 2021, the Family Court found that the children were dependent because there was domestic violence between the parents, Mother struggled with mental health problems, there was a lack of stable housing, Mother was not cooperating with the Pennsylvania agency that had custody of her older children, and for other reasons. DSCYF developed a case plan for Mother, and the Family Court later found the case plan to be reasonable. Mother's case plan required her to schedule and consistently attend appointments for her physical health; complete a mental health evaluation and follow any recommended treatment; complete a substance abuse evaluation; complete a parenting class and exhibit appropriate parenting behaviors during her weekly visits with the Children; obtain and maintain consistent employment; work with a family interventionist to create a budget to show that she could support the children; secure stable housing for herself and the Children; cooperate with the Pennsylvania child welfare agency to complete her case plan as to the older children; and attend the Children's medical appointments. Domestic violence services were offered to Mother but were not a mandatory component of her case plan.

---

[2] *See Kline v. Del. Div. Family Servs.*, 2023 WL 2259101, at *1 n.3 (Del. Feb. 28, 2023) ("When a child is removed from home by DFS and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules." (citing 13 *Del. C.* § 2514; DEL. FAM. CT. R. CIV. PROC. 212-19)).

(6) DSCYF requested a permanency hearing within six months because the Children were less than six months old when they entered DSCYF custody.[3] On or about April 20, 2022, DSCYF filed a motion to change the permanency plan from reunification to concurrent goals of reunification and termination of parental rights ("TPR") and adoption. On or about April 22, 2022, DSCYF filed a petition for termination of parental rights. Shortly thereafter, the Family Court changed the goal for the Children to concurrent goals of reunification and TPR and adoption.

(7) The court continued to hold the required hearings and found that, although Mother had made some progress on her case plan, the Children continued to be dependent as to Mother. The Children were doing well in their foster home, and the foster family was an adoptive resource. On September 19, 2022, the Family Court held a hearing on the TPR petition. At the hearing, Father consented to the termination of his parental rights. The court heard testimony from Mother, Father, the DSCYF treatment worker, the DSCYF permanency worker, the Progressive Life worker, and the Court Appointed Special Advocate appointed for the Children. DSCYF also submitted evidence of Mother's and Father's mental health evaluations

---

[3] *See* 13 *Del. C.* § 1103(a)(5)b (providing that the procedure for termination of parental rights may be initiated when it appears to be in the child's best interest; the child is in DSCYF custody; the parent is not able or has failed to plan adequately for the child's physical needs or mental and emotional health and development; and the "child has been in DSCYF custody or placed by a license agency for at least 6 months and the child came into care as an infant").

5

and that Pennsylvania had terminated Mother's parental rights as to her older children on July 21, 2022.

(8) On October 18, 2022, the Family Court entered an order terminating Mother's parental rights. The court issued an amended order on October 20, 2022. The court held that DSCYF had established, by clear and convincing evidence, two of the statutory grounds for termination of parental rights: involuntary termination of Mother's parental rights over another child[4] and failure to plan adequately for the Children within the statutory timeframe.[5] As to Mother's failure to plan, the court found that Mother completed the parenting class, substance abuse, and physical health components of her case plan. But it found that Mother did not adequately address her mental health needs; had not obtained a source of income or means to support the Children; lacked adequate housing; failed to cooperate with the Pennsylvania child welfare agency as to the older Children; and did not attend all of the Children's medical appointments. The court also found, by clear and convincing evidence, that DSCYF had made reasonable efforts to reunify the family. Applying the best interest factors,[6] the Family Court found that DSCYF had established, by

---

[4] 13 *Del. C.* § 1103(a)(7).

[5] *Id.* § 1103(a)(5).

[6] *See* 13 *Del. C.* § 1103(a) (providing that parental rights may be terminated if one of several statutory grounds is established and "it appears to be in the child's best interest"); *id.* § 722 (setting forth factors that the court may consider when determining the best interests of a child).

clear and convincing evidence, that it was in the Children's best interests to terminate Mother's parental rights. Mother has appealed.

(9) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[7] We review legal rulings *de novo*.[8] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[9] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[10]

(10) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[11] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[12] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition.[13] Second, if the Family Court finds a statutory basis for termination of parental rights, then the court must

---

[7] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[8] *Id.* at 440.
[9] *Id.*
[10] *Id.*
[11] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[12] *Id.* at 537. *See* 13 *Del. C.* § 1103(a) (listing the grounds for termination of parental rights).
[13] 13 *Del. C.* § 1103(a)(5)a-e (listing additional conditions, including that the child has been in DSCYF custody or placed by a licensed agency for at least one year, or for six months if the child came into care as an infant).

determine whether terminating parental rights is in the best interests of the child.[14] Both of these requirements must be established by clear and convincing evidence.[15]

(11) Mother has not submitted any points for this Court's consideration on appeal. Mother's appointed counsel represents that she has determined that no arguably appealable issue exists. After careful consideration of the parties' positions and the record on appeal, we conclude that the judgment of the Family Court should be affirmed on the basis of the Family Court's determination, as set forth in its thorough and well-reasoned decision dated October 20, 2022, that there was clear and convincing evidence that Mother had failed to plan adequately for the Children's needs, that DSCYF had made reasonable reunification efforts, and that termination of Mother's parental rights was in the best interests of the Children. Those conclusions are well-supported by the record.[16] Thus, we affirm.

---

[14] *Shepherd*, 752 A.2d at 537. *See* 13 *Del. C.* § 722(a) (listing factors for consideration when determining the best interests of the child).

[15] *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

[16] Because the finding that Mother failed to plan adequately for the Children's needs established a statutory basis for termination, we express no opinion regarding whether the statutory ground of prior involuntary termination, 13 *Del. C.* § 1103(a)(7), was satisfied in the circumstances of this case.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice